UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| STEFANI E. WESTFALL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 08-24-DCR |
| ) | |
| V. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Stefani E. Westfall ("Westfall") and Defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner"). [Record Nos. 9 and 10] Westfall seeks to reverse the decision of an administrative law judge ("ALJ") concluding that she was not entitled to a Period of Disability, Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Westfall.

**I.    BACKGROUND**

Westfall filed an application for a Period of Disability, DIB, and SSI on May 19, 2005. The claim was denied initially and upon reconsideration. Thereafter, Westfall requested a hearing before an ALJ. On February 15, 2007, a hearing was conducted before ALJ Gloria B.

York in Lexington, Kentucky. During the hearing, the ALJ heard testimony from Westfall and Betty L. Hale, a vocational expert. Thereafter, the ALJ issued a decision denying benefits to Westfall. [Transcript ("Tr."), pp. 18-27] The ALJ concluded that she retained the residual functional capacity to perform a limited range of light work. [Tr., p. 22] Westfall's request for review was denied by the Appeals Council on November 28, 2007. [Tr., pp. 7-9]

At the time of the ALJ's decision, Westfall was a 49 year-old individual with a college education. [Tr., p. 14] She alleges disability beginning June 30, 2003, due to fibromyalgia, vertigo and depression. [Record No. 9, p. 2] Westfall has past work experience as a licensed practical nurse, a respiratory therapist, a social worker assistant, a home health aide, a nursing home admissions coordinator, and a telephone installer. After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Westfall suffers from the following severe impairments: obesity, fibromyalgia, and major depressive disorder. However, the ALJ found that Westfall did not suffer from any impairments or combination of impairments that would qualify her as disabled, as defined in the Social Security Act and regulations [Tr., p. 21]

**II.   LEGAL STANDARD**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the

claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b); 20 C.F.R. § 404.1520(b). Second, a claimant must show that she suffers from a severe impairment. 20 C.F.R. § 416.920(c); 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d); 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual function capacity ("RFC") and relevant past work to determine if she can do past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f); 20 C.F.R. § 404.1520(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276

F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of*

*Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III. DISCUSSION

Westfall asserts that the Commissioner's decision denying benefits is not supported by substantial evidence. More specifically, she alleges that the ALJ erred in rejecting the limitations related to fibromyalgia imposed by her treating physician, Dr. Carolyn Moore. Dr. Moore opined that Westfall should be limited to sitting, walking and standing for less than two hours in an eight hour workday and only occasionally lifting up to five pounds. Additionally, Dr. Moore stated that Westfall should never climb, balance, stoop, crouch, kneel or crawl, and that her abilities to handle, feel, hear and speak were impaired. [Tr., p. 214]

The opinions of treating physicians are generally entitled to greater weight than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). This is because treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927 (2008). "[I]f the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial

evidence in the case record,' then it will be accorded controlling weight." *Rogers*, 486 F.3d at 242 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

However, the "opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings, and is not contradicted by substantial evidence to the contrary." *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002). In *Wilson v. Commissioner of Social Security*, the Sixth Circuit noted that a treating physician's opinion can be discounted when: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques; (2) it is inconsistent with substantial evidence in the record; (3) it does not identify the evidence supporting its finding; and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2) including the nature and extent of the relationship, the supportability of the medical source's opinion (such as through medical signs and laboratory findings), and the consistency of the opinion. *Wilson*, 378 F.3d at 544. When a treating physician's opinion is discounted, the ALJ must provide "good reasons" for doing so, "reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

In *Rogers v. Commissioner of Social Security*, the Sixth Circuit addressed the application of the treating physician rule in the context of fibromyalgia and held that the ALJ erred in failing to sufficiently explain his reasons for rejecting the treating source's diagnosis. *Rogers*, 486 F.3d at 244. The court recognized that "fibromyalgia[1] can be a severe impairment and that, unlike

---

[1] Fibromyalgia "is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" *Id*. at 244 n.3 (quoting *Stedman's Medical Dictionary for the Health Professions*

medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Id.* at 243.  Because the ALJ in *Rogers* adopted the findings of the non-examining sources, which were based solely on objective medical evidence, over the opinion of the treating physician without sufficient explanation, the court held that the ALJ had failed to supply the requisite "good reasons" for rejecting the treating source's opinion.

More recently, in *Vance v. Commissioner of Social Security*, the Sixth Circuit again addressed the application of the treating physician rule relative to a claimant's alleged fibromyalgia.  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 805 (6th Cir. Jan. 15, 2008). However, because the ALJ in that case provided "good reasons" for rejecting the treating physician's conclusions, the court upheld the decision denying benefits.  The court noted that, although fibromyalgia appeared to be the claimant's "biggest problem," treatment notes reflected "continuous 'improvement overall' or, at worst, that the disease remains stable with 'mild problems.'" *Id.*  The court also considered the evidence related to the claimant's daily activities, such as sweeping, mopping, doing laundry, cooking, cleaning, doing dishes, driving, and shopping for groceries, and agreed with the ALJ's conclusion that the claimant's "activities of daily living are also inconsistent with the level of pain and fatigue alleged." *Id.*

Further, the court in *Vance* considered the opinion of a consultative examiner who stated that the claimant "had no joint deformities or swelling; no nodules; no tenderness, redness or warmth; a normal range of motion; normal strength; normal sensation; and no evidence of

---

*and Nursing* at 541 (5th ed. 2005)).  "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id.* at 243.

physical limitation." *Id*. In conclusion, the court recognized that "fibromyalgia is an unusual impairment in that its symptoms are often not supported by objective medical evidence." *Id*. at 806. Nevertheless, the court held that "a *diagnosis* of fibromyalgia does not automatically entitle Vance to disability benefits, particularly so here, where there is substantial evidence to support the ALJ's determination that Vance's fibromyalgia was either improving or, at worst, stable." *Id*. at 806. The court also cited the Seventh Circuit's decision in *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996), for the proposition that, "[s]ome people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority." *Id*. (citations omitted)

As in *Vance*, the ALJ in the present case considered Westfall's allegations of disabling fibromyalgia in light of her daily activities, her testimony and appearance at the hearing, and the medical evidence in the record. The ALJ determined that fibromyalgia did constitute a severe impairment, but that Westfall retained the residual functioning capacity to perform a limited range of light work, including lifting and carrying 10 pounds frequently and 20 pounds occasionally, as well as standing and walking six hours in an eight-hour workday. The ALJ noted that, "[o]verall, her level of medical treatment is inconsistent with pain allegations, and she remains fairly active despite her purported limitations. She testified she can perform small cleaning projects at home, go grocery shopping with others, drive to a local store, occasionally pick up the yard, and do some knitting." [Tr., p. 24] Additionally, the ALJ stated that she "carefully observed the claimant during the hearing and notes that she was not in any obvious pain or discomfort when walking into or out of the hearing room or while sitting during the course of the hearing." [*Id*.] The ALJ concluded that "the claimant's medically determinable

-8-


impairments can reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible." [*Id.*]

Further, as to Dr. Moore's residual functional assessment, the ALJ specifically rejected the recommendations "that the claimant is unable to perform even sedentary work and has markedly limited mental function because there is absolutely no objective basis for these limitations." [*Id.*] The ALJ found that, "[t]he claimant's multiple diagnoses are based on her complaints alone and are not substantiated by other evidence." [*Id.*] Although Dr. Moore asserts that she treated Westfall for approximately ten years, the record reflects that her treatment notes only encompass three examinations, on October 10, 2005, May 10, 2006, and January 16, 2007. [Tr., pp. 211-221] Further, all the treatment notes from these visits merely recite Westfall's subjective complaint of pain, with no clinical findings other than Westfall's claims of tender trigger points. [Tr., pp. 212. 217, 219] *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (holding that ALJ properly rejected doctors' findings based on claimant's subjective complaints, where the ALJ found the claimant was not credible). It is well-established that an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). Accordingly, the Court finds that the ALJ properly determined that Dr. Moore's opinion was not supported by objective findings.

Substantial evidence supports the ALJ's conclusion that Westfall retained the ability to perform light work. A residual functional capacity finding is focused on the limitations that

result from a claimant's medical conditions, not merely upon the diagnosis. *See Webb*, 368 F.3d at 632-33; *Vance*, 260 F. App'x at 806 (noting that a diagnosis of fibromyalgia does not automatically amount to a disability). Here, the record demonstrates that Westfall showed improvement with medication for her fibromyalgia and that her case was not one of the exceptionally severe cases that would mandate a finding of disability. Both Dr. Moore and consultative examiner Dr. Rami Kahwash noted that medication provided at least "mild improvement in her symptoms." [Tr., p. 166, 168 (noting "improvement of her symptoms"), 212 (noting that Cymbalta "is the only thing that really helps her fibromyalgia")] Additionally, Dr. Kahwash noted that she had normal grip strength, no joint deformities or decrease in range of motion, no detectable paraspinal muscle spasm, no impairment in toe or heel walking, no difficulty getting on and off exam table, no nerve deficit, normal muscle group bulk and tone, no muscle atrophy, no signs of mytosis, normal gait and normal station. [Tr., pp. 167-68] Dr. Kahwash concluded that "[a]ccording to the objective finding on today's physical exam, there is no physical evidence for significant restrictions in the patient's tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or ability to travel." [Tr., p. 168]

Two state agency physicians also reviewed Westfall's claims and concluded that she did not have any physical limitations associated with fibromyalgia. [Tr., pp. 190, 210] However, the ALJ decided to give Westfall the benefit of the doubt and limited her to "light work given her weight and fibromyalgia." [Tr., p. 25] After reviewing the record and Westfall's arguments, this Court agrees with the ALJ's analysis and conclusions. As in *Vance*, the ALJ in the present

case articulated "good reasons" for rejecting the opinion of Dr. Moore, and the ALJ's findings are supported by substantial evidence.

Westfall also asserts that the ALJ erred in rejecting the mental restrictions imposed by the consultative examiner, Dr. Gary Stewart, and the two state agency non-examining physicians. [Record No. 9, pp. 14-15] Dr. Stewart noted that Westfall had a fair to poor ability to sustain concentration, persistence and pace, tolerate works stress, deal with change, and demonstrate reliability. He also noted that she had a good to fair ability to work with the general public, perform complex functions, and respond to supervision. [Tr., p. 164] Overall, Dr. Stewart diagnosed a major depressive disorder and opined that "Westfall is considered moderately to markedly impaired by psychological factors." [*Id.*] However, Dr. Stewart also noted that Westfall had average to high average intellectual functioning and that she displayed no problems following simple instructions.

The two state agency non-examining physicians also found that Westfall had moderate difficulties in maintaining social functioning, responding to change in the workplace, and in maintaining concentration, persistence and pace for extended periods. However, contrary to Dr. Stewart's assessment, the state examiners also found that Westfall was limited in her ability to interact with the general public. The examiners noted that Westfall only had mild restriction of activities of daily living and that she had no episodes of decompensation. [Tr., pp. 180, 201-06] Overall, the examiners found that Westfall was not significantly limited in the areas of understanding and memory, social interaction, adaptation, and sustained concentration and persistence, with the exceptions noted above. [Tr., pp. 184-85] The examiners specifically noted that Westfall could understand and remember simple instructions, sustain concentration

for extended periods of two hour segments for simple tasks, tolerate co-workers and supervisors in a task-focused setting. and adapt to changes as needed in light of the other restrictions noted. [Tr., pp. 186, 201-06]

In her decision denying benefits, ALJ York evaluated the limitations imposed by Dr. Stewart and the state agency examiners and concluded that,

> [t]he claimant also has a mental impairment with the features of a mental disorder described in Section 12.04 of Appendix 1; however, she has not sought or received treatment for depression, and the consultative psychologist who evaluated her in August 2005 reported a general assessment of function level of 51 to 60 indicating moderate limitation in function. The Administrative Law Judge finds her mental disorder imposes a moderate limitation in her ability to maintain concentration, persistence and pace but a slight to no limitation in her ability to maintain the activities of daily living and social functioning. There is no evidence of decompensation in work or work-like setting and no evidence of any C criteria associated with Section 12.04 of Appendix 1. Therefore, the Administrative Law Judge finds the depressive disorder does not meet or equal the requirements of Section 12.04 of Appendix 1.

[Tr., p. 22] Based on these findings, the ALJ concluded that Westfall was "limited to a low stress work environment." However, because the ALJ found that Westfall did not suffer from an impairment or combination of impairments that met or equaled one of the listed impairments, she concluded that Westfall was not disabled within the meaning of the Social Security Act and regulations.

Having reviewed the record and the parties' arguments regarding Westfall's allegations of disabling mental limitations, this Court agrees with the conclusions. The ALJ properly considered Dr. Stewart's opinion in light of Westfall's subjective complaints and accorded "little weight" to the limitations suggested "because they are based largely on the claimant's statements alone." [Tr., p. 24] As noted above, an ALJ may reject a physician's assessment when it is based

on subjective complaints that the ALJ determines to be incredible. *See Smith*, 482 F.3d at 877; *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (noting that "doctors' opinions are not due much weight when based solely on reports made by a patient that the ALJ found incredible").

Notably, credibility determinations are particularly within the province of the ALJ and are "to be given great weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence. Here, the ALJ found Westfall's claims to be incredible. The ALJ specifically noted that "[a]lthough she alleged a mental impairment, she related well to the Administrative Law Judge and her representative during the hearing, and she answered questions quickly and appropriately without any evidence of a memory or concentration problem." [Tr., p. 24] The ALJ also found that "[t]here was no obvious evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing." [*Id.*] Finally, the ALJ noted that, "in spite of her alleged profound limitation from the condition, she has sought no treatment other than medication from her family practitioner." [*Id.*]

Accordingly, because the ALJ's credibility determinations are afforded great weight and because the ALJ enumerated specific, detailed reasons for rejecting the mental limitations, this Court is unwilling to disturb any of her findings as to Westfall's alleged disability on appeal. Substantial evidence supports the ALJ's decision denying benefits, as the claimant has failed to show that her impairments or combination of impairments meets or equals a listed impairment.

Further, the ALJ incorporated all relevant limitations in her hypothetical to the vocational expert, and the expert testified that jobs do exist that Westfall is capable of performing. Therefore, the ALJ appropriately determined that Westfall was not disabled within the meaning of the Social Security Act and regulations through the date of the decision.

### IV.   CONCLUSION

For the forgoing reasons, it is hereby **ORDERED** as follows:

(1)   Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 10] is **GRANTED**;

(2)   Plaintiff Stefani E. Westfall's Motion for Summary Judgment [Record No. 9] is **DENIED**;

(3)   The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 13th day of August, 2008.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge